**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| HECTOR LABOY (B-63282), ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 13 C 4882 |
| v. ) | |
| ) | |
| NANCY POUNOVICH, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Pro se Plaintiff Hector LaBoy, an inmate at the Illinois Department of Corrections ("IDOC"), and his wife wished to stay in touch during Plaintiff's incarceration through care packages, in which Mrs. LaBoy sent special photographs of herself to Plaintiff. Correctional Officials at Stateville Correctional Center ("Stateville") barred Plaintiff from receiving these photographs and instead returned them to his wife. One package arrived back to her unsealed and without the photos. These events prompted Plaintiff to file this action, pursuant to 42 U.S.C. § 1983, alleging that the mailroom officials violated his First Amendment rights by refusing him the photographs and by retaliating against him for filing grievances and complaints.

Before the Court are Defendants' motion for summary judgment and Plaintiff's "motion to dismiss Defendant's summary judgment," in which he seeks denial of Defendants' motion. For the following reasons, the Court grants in part and denies in part Defendants' motion. Because Plaintiff's motion seeks no relief beyond denial of Defendants' motion, the Court strikes it as moot. Further, the Court dismisses Defendant Salvador Godinez as a named Defendant to this lawsuit because the Court added Godinez as a nominal Defendant to facilitate service of process on

Defendant Brenda Duran, who was served. The Court also dismisses Defendant Doris Zabet as a named Defendant from this lawsuit because she could not be served after eight attempts and Plaintiff does not discuss Defendant Zabet in his summary judgment filings.

## BACKGROUND

### I. Northern District of Illinois Local Rule 56.1

Consistent with the local rules, Defendant filed a Northern District of Illinois Local Rule 56.1(a)(3) statement of undisputed facts and served pro se Plaintiff a Local Rule 56.2 Notice, which explains in detail the requirements of Local Rule 56.1. Specifically, Local Rule 56.1 "is designed, in part, to aid the district court, 'which does not have the advantage of the parties' familiarity with the record and often cannot afford to spend the time combing the record to locate the relevant information,' in determining whether a trial is necessary." *Delapaz v. Richardson,* 634 F.3d 895, 899 (7th Cir. 2011) (citation omitted). Local Rule 56.1(a) requires the moving party to provide "a statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law." *Petty v. City of Chicago,* 754 F.3d 416, 420 (7th Cir. 2014). "The non-moving party must file a response to the moving party's statement, and, in the case of any disagreement, cite 'specific references to the affidavits, parts of the record, and other supporting materials relied upon.'" *Id.* (citation omitted); *see also* L.R. 56.1(b)(3)(A). Local Rule 56.1(b)(3)(C) "requires specifically that a litigant seeking to oppose a motion for summary judgment file a response that contains a separate statement ... of any additional facts that require the denial of summary judgment.'" *Sojka v. Bovis Lend Lease, Inc.*, 686 F.3d 394, 398 (7th Cir. 2012) (citation omitted). The Court also notes that "[t]o be considered on summary judgment, evidence must be admissible at trial." *Cairel v. Alderden,* 821 F.3d 823, 830 (7th Cir. 2016).

Plaintiff failed to respond to Defendants' undisputed facts. Instead, Plaintiff submitted a "motion to dismiss Defendant's Summary Judgment," in which he seeks denial of Defendants' motion. The first 24 pages of Plaintiff's motion to dismiss consists of numbered paragraphs that contain facts and legal arguments. Plaintiff also attached approximately 75 pages of affidavits and copies of other exhibits that he relies upon to oppose Defendants' summary judgment motion. Defendants treat the first 24 pages of Plaintiff's motion to dismiss, in part, as a statement of additional facts that require the denial of summary judgment. Also, they object to Plaintiff's inclusion of more than 40 paragraphs in his motion and that many were inadmissible.[1] The Court generally accepts Defendants' properly supported statements of fact, along with those facts properly added by Plaintiff and undisputed, as described under Local Rule 56.1, by Defendants. The Court further relies upon Plaintiff's references to exhibits where they are relevant to the Court's analysis and may be admissible at trial. With these guidelines in mind, the following facts are undisputed.

## II. Relevant Facts

Plaintiff is an Illinois prisoner currently housed at Menard Correctional Center, who, at the relevant times, was incarcerated in Stateville. (Def. SOF, Dkt. 135, ¶ 1; Dkt. 84.) Defendants are or were Stateville employees who worked in or supervised the mailroom. In particular, Defendant Nancy Pounovich was a mailroom supervisor between May 2011 and September of

---

[1] Defendants raise conclusory objections or requests to strike as to most of Plaintiff's additional statements of fact pursuant to Local Rule 56.1(b)(3)(c), stating that the allegations were "vague, hearsay, argumentative, and lack foundation." (*See, e.g.,* Dkt. 141, at 9-10.) Defendants did not respond to facts to which they had objected. Such conclusory objections and requests without a proper response to factual content do not aid the Court's review of Defendants' motion. To the extent the Court understood the basis for the objection, the Court considered each.

3

2013, when she retired. (Dkt. 137, at 90; Dkt. 141, at 7.) The remaining movants were mailroom employees: Robert Drzik, from October 1995 through March 2013; Patricia Weghorn, from June 2011 to December 2012; and Brenda Duran (also known as Brenda Stigler), from June 2011 to March 2013. (Dkt. 141, at 7.)

Plaintiff is married to Annette LaBoy. (Dkt. 141, at 2 ¶ 1.) While incarcerated, Mrs. LaBoy has sent Plaintiff photographs of herself and other family members. (Def. SOF ¶ 31.) On numerous occasions, Mrs. LaBoy has attempted to send Plaintiff other, sexier photographs of herself. (*See* Dkt. 137, at 58-59, 71-80.) No photographs are included in the record here, but Mrs. LaBoy described her attire in some of them through a declaration, in which she indicates that she was wearing "nipple covered pasties and a thong that covering [sic] my private areas," (Dkt. 137, at 25), and Defendants admit that she wore at least "pasties" covering her nipples. (Def. SOF ¶ 6; Dkt. 141, at 2-3 ¶ 2 (admitting that it is "[u]ndisputed that Plaintiff's wife wore pasties in the photographs"); Dkt. 137, at 25.) At least ten times between April 15, 2009, and May 1, 2014 correctional officials, who apparently decided that the photographs violated prison policies or rules, prevented Mrs. LaBoy's more suggestive photographs from reaching Plaintiff. (Def. SOF Ex. E, Dkt. 135-1, at 91, 101; Dkt. 137, at 58-59, 71-80.) The documentation provided to Plaintiff, in the form of Return to Sender Mail Receipts, which were, for the most part, neither signed nor initialed by the person filling them out, generally indicated that Mrs. LaBoy's photographs had been deemed to be "nude pictures," otherwise "unappropriate" [sic] or "indecent," or contain "inappropriate gestures" and also "STG" (which is not explained in the record). (Dkt. 135-1, Def. SOF Ex. G, at 100-01; Dkt. 137, at 58-59, 71-77, 79-80.) A 2012 denial appears to have been accompanied by a handwritten note apparently from mailroom staff regarding the denial of Plaintiff's photographs. (Dkt. 135-1, at 100.) After the determinations to

4

deny the photographs to Plaintiff were made, the packages generally were returned to Mrs. LaBoy. (Dkt. 137, at 71-77, 79-80.) One such parcel arrived in June 2012 unsealed and without photographs. (Dkt. 137, at 25.) Plaintiff has no knowledge as to which mailroom employee denied him access to the photographs; the mailroom was located in a different part of Stateville. (Dkt. 137, at 9-11, ¶¶ 4-10.)

The parties discuss two types of prison policies as potentially relevant here. The first, Administrative Directive 04.01.108 (included at Dkt. 135-1, at 81), provides that IDOC "shall review publications for admittance into Department facilities in accordance with 20 Ill. Admin. Code 525: Subpart C and guidelines provided in this directive." *Id*. § I.B. (Def. SOF ¶¶ 8-9.) "Publications . . . may be disapproved" if "obscene" or found to contain "sexually explicit material that by its nature or content poses a threat to security, good order of the facility, or discipline or it facilitates criminal activity" or to be "otherwise detrimental to security, good order of the facility, rehabilitation or discipline, or it might facilitate criminal activity or be detrimental to mental health." *Id*. § II.F.5. (Def. SOF ¶¶ 13-14.) A "Publication" is "any book, booklet, magazine, newspaper, periodical, or similar materials." *Id*. § II.E. Mailroom staff receiving "questionable" or "disapproved" publications are to forward them to the Publication Review Officer, who undertakes a review. *Id*. § II.H.3-4. Although it is unclear precisely what procedure staff followed with all of Mrs. LaBoy's photographs that did not reach Plaintiff, it is undisputed that staff did not follow all portions of the Administrative Directive. (Dkt. 141, at 14, ¶ 17.)

Second, several Warden's Bulletins, since at least 2007, prohibited inmates from possessing nude pictures. Warden's Bulletin #2011-93, dated September 28, 2011, which, invoking Title 20: Part 525 Section 140(k), provides, in part, that "[p]er the Chief Administrative Officer the following items, but not limited to, will not be allowed through the mailroom: . . .

5

[n]ude Photos or prints." (Def. SOF ¶ 15; Dkt. 135-1, at 89.) Former Stateville Warden and Chief Administrative Officer of Stateville from the end of 2009 through the end of 2012, Marcus Hardy, explained in a 2013 Declaration submitted in another case that "a complete ban on nude publications, nude photographs, and nude prints" was necessary due to the volume of mail received for inmates, and "[i]n [his] experience . . . inmates possessing or receiving either publications or photographs that involve any sort of nudity is not safe in maximum security centers such as . . . Stateville which tend to have a more aggressive general population of inmates." (Def. SOF ¶¶ 34-36; Dkt. 135-1, at 61-62.)[2]

From the time Stateville staff denied Plaintiff his wife's more suggestive photographs, Plaintiff – through multiple letters to prison officials and grievances – objected to the removal of his wife's photographs as "nude pictures"; he insisted that, due to her partial coverings, she was actually not nude but semi-nude, with all "private areas" covered, and therefore not in violation of any prison policy. (Def. SOF ¶¶ 20, 23, 27, 28, 29; Dkt. 137, at 60, 63; *see also* Dkt. 137, at 25.) Further, Plaintiff asserted that his wife's photographs did not qualify as coming from a "publication company" for the purposes of IDOC's publication policy and expressed concerns that nudity was determined based only upon the "personal opinion and personal belief" of mailroom staff. (Dkt. 137, at 46; *see also id*. at 63-64.) He repeatedly sought clarification regarding what

---

[2] The record contains references to a Warden's Bulletin #2007-44, (*see* Dkt. 135-1, at 92; Dkt. 137, at 43, 45), which the Court cannot locate in the record. The Court understands, from the information provided, that its relevant content (forbidding inmates from possessing "nude" photographs) is similar, if not identical, to Warden's Bulletin #2011-93. (Def. SOF ¶ 37; Dkt. 135-1, at 108 ("Due to the sheer volume of personal mail, legal mail, packages, and publications that are received by the mail room, there is no alternative means for screening items through the mail room beyond the complete ban on nude publications, nude photographs, and nude prints in Bulletin Number 2011-93, and before that Bulletin Number 2007-44.").

6

constituted nudity for the purposes of prison policies and how the determination regarding whether the photographs contained nudity was made, including whether it was based on a single individual's subjective determination or reviewed by more than one person. (Dkt 137, at 37-38, 41-42, 43-46, 60-67.) He asked his wife to take the photographs differently in an attempt to comply with prison policies, but Stateville staff continued to deny him the photographs. (*See* Dkt. 137, at 61, 94.) Responses to his grievances generally referred to either supervisor Pounovich, or more generally, "mailroom staff" as having been consulted regarding a reason for the denials of photographs. Plaintiff, however, asserts that Defendants Drzik and Pounovich were personally involved in an earlier confiscation.

On November 13, 2013, then-Stateville Warden Michael Lemke issued Warden's Bulletin #2013-109. (Dkt. 137, at 85.) That bulletin provided that "[p]ersonal or commercially published photographs that include nudity . . . and sexual behavior are not allowed. Nudity means the showing of the human male or female genitals, pubic area buttocks with less than a fully opaque covering, or the showing of the female breast with a less than fully opaque covering of the areola or nipple. . . ." (*Id.*; Dkt. 141, at 10 ¶ 19.)

Pro se Plaintiff filed this lawsuit in July 2013. In his amended complaint, he alleges that, although his wife's photographs complied with prison policies, Defendants refused to remit them to him twice, once in 2012 and once in 2014, violating his constitutional rights.[3] He also alleged

---

[3] The Court granted Plaintiff leave to amend his complaint, which he did in July 2014. In his response to summary judgment, Plaintiff challenges an additional August 2011 incident involving Defendant Drzik. The photographs at issue in this August 2011 incident are not described in the record, although the record suggests that they were denied for containing nudity. Plaintiff may not amend his complaint through argument in his summary judgment response. *See Abuelyaman v. Illinois State Univ.*, 667 F.3d 800, 814 (7th Cir. 2011). Thus, the Court does not address the merits of this claim in resolving the present motion.

that, because he filed "complaints and grievances against" mailroom staff, beginning in April 2009, regarding denial of his wife's photographs, Defendants retaliated against him by: (1) refusing to permit him to have the 2012 and 2014 photographs; and (2) failing to properly seal one package of returned photographs. (Dkt. 39, at 5-6.)

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson*, 477 U.S. at 255 (quotation omitted). "To survive summary judgment, the non-moving party must show evidence sufficient to establish every element that is essential to its claim and for which it will bear the burden of proof at trial." *Life Plans, Inc. v. Security Life of Denver Ins. Co.,* 800 F.3d 343, 349 (7th Cir. 2015).

## ANALYSIS

Defendants seek summary judgment on both of Plaintiff's claims: (1) his claim that Defendants violated his First Amendment rights to access written communications and

8

photographs from his wife; and (2) his First Amendment retaliation claim based upon the arrival of one package to his wife without the subject pictures and a final removal of her photographs from a package after he filed the present lawsuit.

I. **First Amendment Claim**

Defendants first argue that summary judgment is appropriate because "Plaintiff's constitutional rights were not violated in this case as a matter of law." (Dkt. 132, at 3.) It is well settled that a prisoner "retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974); *see also Bridges v. Gilbert*, 557 F.3d 541, 548 (7th Cir. 2009). "Thus, challenges to prison restrictions that are asserted to inhibit First Amendment interests must be analyzed in terms of the legitimate policies and goals of the corrections system, to whose custody and care the prisoner has been committed in accordance with due process of law." *Pell,* 417 U.S. at 822.

Accordingly, "'[w]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests.'" *Payton v. Cannon*, 806 F.3d 1109, 1110 (7th Cir. 2015) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)). "Legitimate penological objectives include crime deterrence, prisoner rehabilitation, and internal prison security," *Bridges*, 557 F.3d at 548, and "[p]risons have great latitude in the reading material of prisoners." *Payton,* 806 F.3d at 1110 (citation omitted). The *Turner* Court provided four factors to aid courts in balancing prisoners' rights against the need for deference to prison administrators: "(1) the validity and rationality of the connection between a legitimate and neutral government objective and the restriction; (2) whether the prison leaves open 'alternative means of exercising' the restricted right; (3) the restriction's bearing on the guards, other inmates,

and the allocation of prison resources; and (4) the existence of alternatives suggesting that the prison exaggerates its concerns." *Munson v. Gaetz*, 673 F.3d 630, 633 (7th Cir. 2012) (citing *Turner*, 482 U.S. at 89-91).

Applying this test, "at least four federal appeals courts have considered First Amendment challenges to prison bans on the receipt by prisoners of nude or sexually explicit photographs, and each has upheld the bans." *Gray v. Cannon*, 974 F. Supp. 2d 1150, 1156-57 (N.D. Ill. 2013) (citing cases); *see also Payton,* 806 F.3d at 1110-11 (affirming summary judgment grant as to ban of pornographic magazines pursuant to Stateville policy prohibiting sexually explicit material threatening to security, good order, or discipline or furthering criminal activity, but observing that "[t]he Illinois Department of Corrections, which owns and administers Illinois state prisons, might be well advised to study Stateville's pornography policy—and with an open mind").

Here, Defendants treat Plaintiff's First Amendment claim as to the denial of his wife's pictures in 2012 and 2014 as a direct challenge to Stateville's policies and defend both the Administrative Directive 04.01.108 and the Warden's Bulletins as legally sound under the reasonableness test for "regulations affecting the sending of a 'publication' to a prisoner" as set forth by the Supreme Court in *Turner*. Defendants, however, have misunderstood the gravamen of Plaintiff's complaint because he raises neither a facial challenge to the policies cited nor an as-applied challenge. *See, e.g., Center for Individual Freedom v. Madigan*, 697 F.3d 464, 475 (7th Cir. 2012). Rather, he argues that the policies simply do not apply to his wife's photographs.

Plaintiff's main argument is that the Warden's Bulletins did not ban his wife's photographs because the Bulletins banned only nude photographs, and that his wife was not nude in the photographs. (*See, e.g*., Dkt. 137, at 1, 7-8, 11-13). Defendants do not argue that the photos were denied to Plaintiff not because of nudity but because of "inappropriate gestures" and "other"

10

reasons, listed as the cryptic and unexplained "STG," as noted in the documentation sent to Plaintiff. (*See* Dkt. 135-1, at 100-01.) The photographs do not appear in the record, and pivotal fact questions remain, namely, were the photographs denied due to "inappropriate gestures" or "STG," and, if so, which photographs and for what gestures? Second, if the photographs were, in fact, denied due to nudity, as the parties seem to assume, was Mrs. LaBoy nude in some or all of the pictures Plaintiff was denied? *See* Merriam Webster's Collegiate Dictionary 850 (11th ed. 2009) (defining "nude," in part, as "devoid of a natural or conventional covering; *esp* : not covered by clothing or a drape"); Black's Law Dictionary 1233 (10th ed. 2014) (defining "nude" as "[n]aked; unclothed").[4] The parties, after all, agree, that Mrs. LaBoy was wearing "pasties" (that may have covered her areolas and nipples), and Plaintiff submitted evidence that she also was wearing thong underwear in some photographs. Viewing these facts and all reasonable inferences in Plaintiff's favor – as the Court is required to do at this stage of the proceedings – there are genuine issues of material fact whether Stateville staff properly withheld these photographs from reaching Plaintiff under the Warden's Bulletins.

These facts, however, would not prevent summary judgment if prison staff had barred the photographs on another legitimate penological objective. Defendants, however, do not point to other legitimate penological objectives behind barring Plaintiff from receiving his wife's photographs. Instead, they devote the majority of their brief defending a different policy, the Administrative Directive's "Procedure for Review of Publications." (Dkt. 132, at 5-8.) Viewing pro se Plaintiff's filings liberally, *see Thomas v. Williams*, 822 F.3d 378, 385 (7th Cir. 2016), he

---

[4] The Court notes that the definition of "nudity" in Warden's Bulletin #2013-109, which was released between the 2012 and 2014 rejections of Mrs. LaBoy's photographs, arguably would not have provided a basis to reject Mrs. LaBoy's photographs, depending on what was depicted.

questions whether photographs enclosed in letters or cards from his wife should be deemed "publications" subject to that Directive. To clarify, the definition of "publication," includes "any book, booklet, magazine, newspaper, periodical, or similar materials," (Dkt. 135-1, at 81, § II.E), which would not seem to reach the materials in question here. Indeed, Defendants question the application of the Administrative Directive in their reply brief asserting that the policy applies only to "publications which are ordered by inmates" and seem to argue that this means it would not have applied to the photographs Plaintiff's wife sent him. (R. 142, Reply Brief, at 6 n.3).

Finally, it appears that Stateville staff did not use the Administrative Directive to prevent Mrs. LaBoy's photographs from reaching Plaintiff – the Warden's Bulletins (or the language therein) were cited as providing the basis for denial in most instances, and it is undisputed that at least some of the detailed procedures set forth in the Administrative Directive were not followed when the photographs were rejected, apparently by mailroom staff without further review.

Next, the Court turns to who was responsible for denying the photographs to Plaintiff in 2012 and 2014. *See Minix v. Canarecci*, 597 F.3d 824, 833 (7th Cir. 2010) ("individual liability under § 1983 requires 'personal involvement in the alleged constitutional deprivation'") (citation omitted). Defendants' sole developed argument in their opening brief as to their personal involvement in the key events is essentially this – Stateville's Warden, through the Warden's Bulletins, prohibits nude photographs from leaving the mailroom, and thus mailroom employees, are "not the decision makers concerning whether nude photographs should be confiscated." (Dkt. 132, at 1.) In making this argument, Defendants seem to concede that one (or more) of them determined that the photographs were inappropriate.

Not until their reply brief do Defendants explicitly challenge a lack of evidence as to their personal involvement in the 2012 incident. *See United States v. Vitrano,* 747 F.3d 922, 925 (7th

12

Cir. 2014) (Arguments made for the first time in a reply brief are waived.) Plaintiff, for his part, points to a 2011 record of confiscated contraband for nude photographs sent by his wife, which appears to have been authored by the never-served former Defendant "P. Weghorn," with Defendant Drzik signing as a witness. Moreover, some of the Return to Sender Mail Receipts appear to have a letter "D" handwritten at the bottom, although the 2012 and 2014 forms do not contain it. The record as a whole is sufficient to tie the denial of photographs – and Defendants themselves – to the mailroom. Because the record provides no further information as to who made the necessary determinations, examining the evidence and reasonable inferences in Plaintiff's favor, he has raised a genuine issue of fact for trial whether Defendants were involved in the 2012 denial. On this record, the Court denies Defendants' motion for summary judgment as to the 2012 photographs.

Plaintiff, however, has not demonstrated a triable issue of material fact as to whether any of the four Defendants was responsible for the denial of his wife's 2014 photographs. Plaintiff conceded that he has no independent knowledge regarding the mailroom employees, save what he seems to have been aware of the name of the supervisor during some of the relevant time, Nancy Pounovich. On the other hand, Defendants have asserted in their signed discovery responses that none of them worked in the mailroom in 2014. Plaintiff does not contest this fact. Defendants cannot, therefore, have denied him the 2014 photographs. The Court thus grants Defendants' summary judgment motion in relation to the 2014 photographs.

## II. Retaliation Claim

Next, Defendants move for summary judgment on Plaintiff's retaliation claim arguing that he has failed to set forth evidence raising a triable issue of fact establishing the elements of this claim. To survive a motion for summary judgment on this claim, Plaintiff must present evidence

permitting a reasonable jury to conclude that: (1) he engaged in activity protected under the First Amendment; (2) he suffered a deprivation that would likely deter future First Amendment activity; and (3) and that his First Amendment activity was at least a motivating factor in Defendants' decisions. *See Perez v. Fenoglio*, 792 F.3d 768, 783 (7th Cir. 2015) (citing *Bridges,* 557 F.3d at 546. Defendants assume, as does the Court, that Plaintiff's grievances or complaints regarding the rejection of his wife's photographs are protected activities for the purposes of his retaliation claim.[5] *See Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012) (holding that Plaintiff stated retaliation claim based on deprivation that followed his use of prison grievance system). Instead, Defendants argue that Plaintiff fails to establish that his grievances or complaints were at least a motivating factor for Defendants' actions. The Court agrees.

Construing his pro se filings liberally, Plaintiff argues that the sequence of events establishes that the conduct he challenges was retaliatory, namely, that because prison officials took additional actions he deemed to be incorrect after he had filed grievances and this lawsuit, their post-grievance or post-lawsuit conduct must have been retaliatory. Plaintiff's argument is flawed. As to the denial of the 2014 photographs, it is undisputed that there is no current named Defendant who remained employed in the mailroom to retaliate against Plaintiff in 2014. Moreover, as Plaintiff insists, mailroom staff repeatedly refused him his wife's photographs, both before and after he filed grievances and this lawsuit. The fact that *one* of at-least *ten* refusals followed the filing of this lawsuit is insufficient to carry his burden that the last occurrence was

---

[5] Given Defendants' assumption, the Court need not address two recent Seventh Circuit decisions regarding this issue. *See Herron v. Meyer*, 820 F.3d 860, 863-64 (7th Cir. 2016) (questioning whether all complaints submitted through grievances are protected speech); *but see Ogurek v. Gabor*, __ F.3d __, 2016 WL 3512626, at *2 (7th Cir. June 27, 2016).

retaliatory.  *See Famous v. Pollard*, 449 Fed. App'x 515, 517-18 (7th Cir. 2011) ("Famous does not explain why the district court should have concluded that this conduct was retaliatory when it had apparently occurred both before and after he filed his complaint.").  Similarly, the fact that mailroom staff denied him his wife's suggestive photographs, for at least the seventh time, in 2012, long after he began submitting grievances on the issue does not establish that they did so in retaliation for his grievances.  Instead, the mailroom staff simply continued to do what they were already doing, despite Plaintiff's complaints.

As to Plaintiff's allegation that one of the many returned packages of his wife's photographs arrived in 2012 unsealed and without the photographs, Plaintiff relies upon his prior grievances to argue that mailroom staff must purposely have returned the package unsealed to retaliate against him.  Plaintiff's grievance that most closely preceded the package returned to his wife was dated August 5, 2011, approximately ten months earlier.  (Dkt. 45-46.)  Under the circumstances, Plaintiff relies on nothing but speculation to connect his much earlier grievances to that event.  *See Boss v. Castro,* 816 F.3d 910, 916 (7th Cir. 2016) (at summary judgment, courts "construe all inferences in the non-movant's favor, but he is not entitled to the benefit of inferences that are supported only by speculation or conjecture.").

The Court is also skeptical that sending the package back unsealed deprived Plaintiff of his constitutional rights.  Plaintiff himself had already been deprived of the photographs, and mailing the package back unsealed is simply too attenuated from Plaintiff filing grievances to be a deterrent to filing future grievances (and Plaintiff, notably, was not deterred).  Therefore, the Court grants Defendants' summary judgment motion as to Plaintiff's retaliation claim because Plaintiff has failed to present evidence creating a triable issue of fact in relation to all of the elements of his retaliation claim.  *See Life Plans, Inc.,* 800 F.3d at 349.

On a final note, for the first time in his summary judgment response, Plaintiff suggests that Defendants violated his due process rights by failing to follow the procedures set forth in the Administrative Directive. Plaintiff does not develop this argument with legal citation, and, given the pivotal questions regarding whether the Directive has any application here, the Court does not reach it here. *See United Cent. Bank v. Davenport Estate LLC*, 815 F.3d 315, 318 (7th Cir. 2016) (perfunctory, undeveloped arguments are waived).

## CONCLUSION

For the reasons stated above, the Court grants in part and denies in part Defendants' motion for summary judgment [131]. The motion is granted to the extent that the following claims are dismissed: (1) Plaintiff's claim that denying him his wife's photographs in 2014 violated his rights pursuant to the First Amendment; and (2) Plaintiff's retaliation claim is dismissed in its entirety. Plaintiff's "motion to dismiss Defendants' summary judgment" [137] requests no further relief, and thus the Court strikes it as moot.

**Dated:** August 11, 2016

                            **ENTERED**

                            *[signature]*

                            **AMY J. ST. EVE**
                            **United States District Court Judge**